BORIS RAFAELLO NEGRETTI SANTISTEBAN, Appellant, *v.* REGISTRAR OF PROPERTY OF SAN JUAN (FIRST SECTION), Respondent.

No. 1077. Submitted October 25, 1940.—Decided November 25, 1940.

*Villamil & Santana Becerra* for appellant. The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On November 30, 1939, the District Court of San Juan entered an order declaring the minor Boris Rafaello Ne-

gretti, now appellant, to be "judicially emancipated for all legal purposes, without exception, said minor henceforth to have the power to manage his own person and property as if he were of age."

About a year afterward, on September 9, 1940, the emancipated minor executed a deed before a notary, wherein he appears as the purchaser of a certain lot in Santurce. Upon the deed being presented in the registry of property, the registrar recorded it "subject to the curable defect of a failure to record the emancipation in the civil registry."

In the case of *Córdova* v. *Registrar*, 55 P.R.R. 714, this court (to quote from the syllabus) held that—

"When recourse is had to the Registry of Property requesting the record of a contract executed by virtue of an emancipation, it is necessary to state that the emancipation was previously noted in the Civil Registry. Where that previous note does not appear, the registrar acts correctly in calling the attention of future contracting parties to that fact."

The appellant maintains that the above decision is applicable only to emancipations by concession of the father or mother exercising the *patria potestas*, and not to judicial emancipations.

Title XI of Book First of the Spanish Civil Code deals with emancipation and majority. Section 314 thereof provides:

"Emancipation takes place—
"1. Upon the marriage of the minor;
"2. Upon the attainment of majority;
"3. By concession of the father or mother exercising the parental authority."

When that code was revised in 1902, the Puerto Rican lawmaker added a new kind of emancipation: by judicial concession. Section 302 of the Revised Civil Code, which is the first section of Title XI, Book First, says:

"The law recognizes four kinds of emancipation:
"1. Emancipation conferring the power to administer property.

"2. Emancipation by marriage.

"3. Judicial emancipation.

"4. Emancipation by reason of having attained the age of majority."

That section was amended in 1930 and now appears as section 232 of the Civil Code, 1930 ed. It provides:

"The law recognizes four kinds of emancipation:

1. Emancipation through grant by the parent exercising the *patria potestas*.

"2. Emancipation by marriage.

"3. Judicial emancipation.

"4. Emancipation by reason of having attained the age of majority."

The same legislature which authorized the new mode of emancipation also expressly provided that the emancipation by judicial concession "shall be recorded . . . in the civil registry." Section 245 of the Civil Code, 1930 ed.

Likewise it was provided that "the registry of civil status, shall include the records or entries of births, marriages, emancipations, acknowledgments and legitimations, and deaths, . ." (section 249 of the Civil Code, 1930 ed.), without making any distinction as to the kind of emancipation.

The provision regarding the record is mandatory. The emancipation must be recorded and the registrar is justified in demanding proof that the law has been complied with.

We think, therefore, that the decision in the case of *Córdova* v. *Registrar, supra,* although rendered in connection with an emancipation by concession of the parents, established a general rule which is applicable to all kinds of emancipation including those by judicial concession.

Now, must the omission be characterized as a curable defect? Strictly speaking it must not, in our judgment.

A similar case already decided by this court upholds the answer which we have just given to the question asked above. We refer to the case of *Quiñones* v. *Registrar,* 54 P.R.R. 115, 118–20, in which we said:

"We know that the registrar refused to record the deed in question exclusively on the ground of the failure to present the plan. Could he do that? According to section 2 of the joint resolution in question, 'no copy of plans not previously approved by the Commissioner of the Interior of Puerto Rico shall be admitted in the registries of property, etc.,' and further on it is provided by section 7 that 'a plan of every segregation or grouping made in regard to any property or properties shall be presented, and the part segregated or the properties grouped shall be shown thereon.'

"Therefore, it only establishes an obligation that must be fulfilled. It fails to provide that the failure to comply with such a duty should bar the record of any contract connected therewith.

"Such being the case, we must refer to the Mortgage Law itself in order to ascertain when the record must be refused or when the same shall be made with a statement of the curable defect or defects that might be pointed out by the registrar.

"Article 65 of the said Mortgage Law, as amended by Act No. 20, Sess. Laws of 1926, Third Special Session, p. 152, approved July 9, 1936, in its pertinent part reads as follows:

" 'Article 65.—*Curable defects shall be those which affect the validity of an instrument without necessarily producing the nullity of the obligation therein constituted.*

" 'Registrars shall not suspend the record, entry or cancellation of any instrument by reason of curable defects. The defects which the instrument may have shall be set forth in the record and whenever the necessary documents are presented for correcting the defects in the instrument, such correction shall be set forth by means of a marginal note.

" '*Incurable defects shall be such as necessarily render the obligation null and void.*'

"Neither the failure to draw up the plan nor the omission to present the same in the registry necessarily renders null and void the deed sought to be recorded. Such defect, therefore, cannot be termed incurable. Nor can it be alleged either that the failure to present such plan affects the validity of the title. Nor, strictly speaking, can such defect be called curable.

"Now, the point under consideration being the failure to comply with a legal requisite, it seems to us logical that the registrar should set forth such failure so that, pursuant to the essential purpose of registries of property, prospective parties to any transaction regarding realty should be clearly advised as to the omission of something

that they might require for their protection. It is in this respect, we think, that the failure to present the plan can and must be made to appear as a curable defect, since it is really something that should have been but was not done and that can be done afterwards, thus supplying the omission.''

In the case of *Córdova* v. *Registrar, supra,* we went further and disregarded the characterization of the defect as a curable one, confining ourselves to the holding that the duty of the registrar was fulfilled by his calling attention to the omission, regard being had for the fact that this court had held in the case of *Travieso* v. *McCormick,* 54 P.R.R. 312, that the emancipation, as a judicial act, is valid even if it is not recorded.

In virtue of the foregoing, the decision appealed from must be reversed in so far as it characterizes as a curable defect the failure to show that the emancipation of the minor who executed the instrument embodying the recorded contract is recorded in the civil registry, and the registrar must confine himself to calling attention to that fact for the proper purposes.